AUBUCHON *et al.*, Plaintiffs in Error, v. AMES, Defendant in Error.

1. Where a field lot confirmed by the second section of the act of Congress of April 29, 1816, has a definite and certain location, the statute of limitation will run in favor of an adverse possession prior to a survey by the United States, although in the tabular list of the recorder the claim was stated to be " confirmed to be surveyed."

*Error to St. Louis Court of Common Pleas.*

This was an action of ejectment to recover an undivided three-tenths of so much of a tract of three by forty arpens in the " Grand Prairie common field" of St. Louis as the defendant should be shown to be in possession of. Plaintiffs claim title as the legal representatives of widow Hebert, to whose representatives the said lot was confirmed by act of Congress of April 29, 1816. The facts of this case, as they appeared in evidence, are the same as those of the case of Aubuchon v. Murphy. (See 22 Mo. 115.) In this case evidence was introduced by defendant showing the identity of Charles Sanguinet, who made the memorandum of sale of the property to Brazeau.

The court, at the instance of the defendant, gave the following instructions and the plaintiff duly excepted thereto : " 1. If the jury believe from the evidence that the widow Hebert, from whom the plaintiff claims title, was the same person of whose estate Charles Sanguinet was appointed administrator, as given in evidence, and that the writing given in evidance of Charles Sanguinet to Joseph Brazeau was made by said Sanguinet as said administrator, and that it embraced any of the land sued for in this suit, and that the deeds given in evidence respectively, of said Brazeau and wife to Louis and Auguste Brazeau, and of said Louis and Auguste to Angus L. Langham, and of said Langham by the sheriff of the county of St. Louis to Brown Cozzens, and of said Cozzens to Edward Bates, and of said Bates to the defendant Ames, embraced any of the land sued for in this suit, and that said Langham as early as 1819 entered upon and took possession thereof, under said deed of Louis and Auguste, and made costly and notorious improvements on the same, and dwelt there, and that the possession and improvement of the same have ever since been kept and continued publicly, expensively and conspicuously by said Langham, Cozzens and Ames, and others under or through them respectively, successively, under a claim of right thereto by virtue of said writing and deeds, and that Louis and Henry Trudeau and Mrs. Ranger, grantors of the plaintiff, have been of the age of twenty-one years, and Mrs. Ranger unmarried, also for twenty years next before the commencement of this suit, then the jury may presume that said Sanguinet did lawfully sell said land to said Joseph Brazeau, and find for the defendant as to said land.    2. If the jury believe from the evidence that the widow Hebert, from whom the plaintiff claims title, was the same person who is a party to the instrument of conveyance of widow Hebert to Joseph Labuxiere, given in evidence, and that said instrument embraces any of the land sued for in this suit, then they should find for the defendant as to so much of the land sued for in this suit as is embraced in said instrument.    3. If the jury believe from

the evidence that the defendant and those through whom he claims and holds possession of so much of the land sued for as he was in possession of when this suit was begun, had had the continuous possession thereof for and during twenty years next before the commencement of this suit, claiming the same adversely to all others, and that twenty years before this suit was begun Henry and Louis Trudeau, and Mrs. Ranger, the grantors of the plaintiff, were twenty-one years of age, and Mrs. Ranger unmarried also, and that their parents were also dead as long before this suit was begun, then they should find for the defendant.    4. And if the jury believe from the evidence that the defendant and those through whom he claims the land in controversy entered upon the same under deeds embracing the same, the jury should find that the possession so taken of any part embraced in such deeds was a possession of the whole, unless the contrary be proved, and every possession thereof by others, by their respective permissions or authority, was their possession respectively."

The plaintiff asked the following instructions, which the court refused, and the plaintiff duly excepted: " 5. The paper purporting to be a deed from Charles Sanguinet to Joseph Brazeau, dated the 26th December, 1786, a copy of the record of which has been given in evidence by the defendant, and the paper purporting to be archive No. 2389, a copy of the record of which has been given in evidence by the defendant, do not, nor does either of them pass to said Brazeau any title or claim to the premises therein described that had belonged to the widow Hebert in her lifetime.    6. The statute of limitations would not begin to run against the legal representatives of the widow Hebert as to the land mentioned in the confirmation papers given in evidence by the plaintiff, before the execution of the United States survey No. 1256, given in evidence by the plaintiff."

The plaintiff took a nonsuit with leave, &c.

*Polk*, for plaintiff in error.

I. The instrument purporting to be a memorandum of sale

by Charles Sanguinet ought to have been excluded from the jury.

II. The statute of limitations did not begin to run in this case until the 29th of April, 1851, the date of the approval of the survey by the United States of the confirmation given in evidence. (West v. Cochran, 17 How. 416.)

III. The first instruction is erroneous. (See 1 Phil. Ev. 161; Cow. & Hill's notes, 357; 2 Conn. 631; Dessaunier v. Murphy, 22 Mo. 95.)

*Krum & Harding*, for defendant in error.

I. The memorandum of sale was properly admitted. (Aubuchon v. Murphy, 22 Mo. 115.)

II. A survey was not necessary in this case. The statute of limitations ran prior to the survey.

III. The court committed no error in giving or refusing instructions.

RICHARDSON, Judge delivered the opinion of the court.

This suit is brought to recover an undivided interest in a common field lot situate in the Grand Prairie of St. Louis, conceded to the widow Hebert and confirmed to her representatives by the second section of the act of Congress approved April 29, 1816, entitled " An act for the confirmation of certain claims to land in the western district of the state of Louisiana and in the territory of Missouri." Under the proper head in the tabular list of decisions by the recorder reported to Congress and opposite the claim of widow Hebert is this remark: " Confirmed 120 arpens to be surveyed." The survey was executed in 1838, but not approved until the 29th of April, 1851, just thirty-five years after the confirmation, and we are not apprised that a patent has yet been issued.

The controlling question in the case is, when the statute of limitations began to run against the plaintiff in favor of the adverse possession?

The act of 1807 respecting claims to land in the territory

Aubuchon v. Ames.

of New Orleans and the district of Louisiana contained no ·
words of present grant, but was prospective in its operation;
and the rights of claimants were dependent on acts to be per-
formed by them and the subsequent decisions of the commis-
sioners. The fee that resided in the United States was not
then passed to the claimants, and the act only undertook to
provide measures for ascertaining and adjusting claims with-
out confirming them, "but gave to the board of commission-
ers power to adjudicate claims against the United States and
conclude the government as to the question of right in the
claimant." Whether any claim would ever be confirmed
was not known when the act was approved, for confirmations
depended on the proofs of the parties and the decisions of the
board; and if commissioners had not been appointed, or had
failed to act, or had decided adversely to the claimants, the
law would not have benefitted any person.

But the act of 29th April, 1816, spoke in a different tone
and tense, and declared that the claims embraced in the re-
corder's reports, which had received his favorable decision,
" *shall be and the same are hereby confirmed.*" A confirma-
tion by this act carried the legal title, and being a direct
grant of the fee by Congress was the highest evidence and
grade of title. (Strother v. Lucas, 12 Peters, 454; Marsh
v. Brooks, 14 How. 524.) No one in this state has ever
doubted that land confirmed by this act was subject to taxa-
tion, that it was vendible under execution, and passed by
will or deed, or under the statute of descents; and it has
never been supposed that these incidents of ownership were
suspended until it was the pleasure of the deputy surveyor
to make the survey, or the clerks in the land department at
Washington to prepare the patents.

In Grignon v. Astor, 2 How. 369, the claim of Pierre
Grignon was confirmed by an act of Congress passed in Feb-
ruary, 1823, for which the patent did not issue until 1829,
and in the meantime the land having been sold by his admin-
istrator under an order of court, it was contended that the
sale was void, because he had no such estate, until the ema-

nation of the patent, as could be sold'; but the court observed that " the title became a legal one by its confirmation by the act of Congress of February, 1823, which was equivalent to a patent," and that " it was a higher evidence of title, as it was the direct grant of the fee, which had been in the United States, by the government itself, whereas the patent was only the act of its ministerial officers."

The confirmation in the case of West and Cochran, 17 How. 403, was under the act of 1807, which, we think, is essentially different from the act of 1816 ; and it may be doubted whether the doctrine of that case was intended to apply to any claims except such as are so uncertain as to their boundaries that public surveys are necessary to locate them ; for the learned judge who delivered the opinion in that case, after saying in the later case of Stanford and Taylor, 18 How. 412, that " *where the claim has no certain limits,* and the judgment of confirmation carries along with it the condition that the land shall be surveyed and severed from the public domain and the land of others," attaches to no land until it is designated by a survey, proceeds then to show that the concession to Angela Chauvin was so indefinite in its boundary that a survey was required to attach it to any land.

It is not pretended in this case that the concession to the widow Hebert was uncertain as to its location, or that it required a survey to identify it. It was one of the common field lots in the Grand Prairie, bounded on the north by the lot of Bizette, and on the south by Kiercereau, and its definite location was no doubt quite as well known forty years ago, when Langham built on the tract, as it has been since the approval of the survey in 1851. Since 1818, buildings at different times have been erected on this land ; it has been occupied and owned by various persons ; it has been the subject of repeated sales and conveyances, and all the time since the confirmation has been treated as private property.

Our laws from 1825 down to the present time have authorized actions of ejectment to be maintained on confirma-

tions under the act of 1816, and there is no reason in justice and no principle of public policy why the statute of limitations should be so suspended until a survey is made or the patent issues in favor of a title like the one in this case on which an action of ejectment could have been maintained more than thirty years ago. If a party is under disability or can not sue or recover on his title because something remains to be done by the government to give him a right of action, time should not be counted against him in favor of an adverse possession. But when a full right of action in all the forms of law is given, the repose of the country requires that the same measure of indiscriminate justice should be applied to actions on titles of this character that governs other actions of ejectment.

The view we have taken of the case renders it necessary to extend this opinion further or to notice the instructions in detail ; and, in relation to the first, instruction given for the defendant it is sufficient to say that, whether the hypothetical facts stated in it warranted the jury in presuming that Sanguinet lawfully sold the land to Brazeau is immaterial and need not be discussed or decided, for the instruction contained another distinct element independent of the doctrine of presumption, and the verdict could not have been made on this instruction unless the jury had found the existence of facts absolutely necessary to establish a perfect defence under the statute of limitations.

All the judges concurring, the judgment will be affirmed.