Virginia L. Dean et al., Appellants, *v.* Jacob Bittner, Respondent.

### June 17, 1879.

1. The rule in *Chouteau* v. *Gibson*, that the statute does not begin to run until the issuance of the patent, has no application to titles derived under the act of April 29, 1816, which act passed the title of the United States to the confirmee.

2. The title passed by the act of 1816, without further survey, where the land had been definitely located on a concession by De Lassus and a survey by Soulard.

3. The language of the act of 1816, that "all claims embraced in the recorder's reports which have received his favorable decision shall be and are hereby confirmed," embraces the claims "of the legal representatives of every person claiming," etc.

4. The adoption of the common law into the Territory did not affect the validity of the legislative grant of the United States, which need not contain the technical terms usual in a conveyance.

5. The presumption is that one who disappeared at an unknown date in 1809 was alive on April 29, 1816.

Appeal from St. Louis Circuit Court.

*Affirmed.*

H. H. Denison, for appellants : No limitation can prevail against the United States, nor against those holding the equitable title under it prior to the issuing of the patent. — *Gibson* v. *Chouteau*, 13 Wall. 92 ; *McIlhinney* v. *Ficke*, 61 Mo. 329 ; *Miller* v. *Dunn*, 62 Mo. 216. Title does not pass where no patent has issued. — *Wilcox* v. *Jackson*, 13 Pet. 499. The confirmation of 1816 was limited to the special claims enumerated. — *St. Louis* v. *Laughlin*, 49 Mo. 559 ; *Grumley* v. *Webb*, 44 Mo. 444. Where the confirmee is not *in esse*, the confirmation is a nullity. — *Stubblefield* v. *Briggs*, 2 Ohio St. 216 (citing *Galloway* v. *Finley*, 12 Pet. 264) ; *Galt* v. *Galloway*, 4 Pet. 345 ; *McDonald* v. *Smalley*, 6 Pet. 261.

M. Kinealy, for respondent : The effect of a confirmation by the act of April 29, 1816, was to pass the legal

title, and no patent was necessary for that purpose. — *Aubuchon* v. *Ames*, 27 Mo. 92. An absent person is presumed to be alive until after the expiration of seven years. — *Hancock* v. *Insurance Co.*, 62 Mo. 26. The act of 1816 embraced the legal representatives of claimants. — *Hogan* v. *Page*, 2 Wall. 605. A legislative grant need not use the technical terms required in a conveyance. — *Rutherford* v. *Green*, 2 Wheat. 198.

BAKEWELL, J., delivered the opinion of the court.

This is an action of ejectment to recover one fifty-fifth part of the tract of land known as United States survey No. 1927, containing about four hundred arpents. On January 1, 1800, Don Carlos De Lassus conceded to Leon N. St. Cyr, in accordance with his application, four hundred and nine arpents of the land, and ordered Don Antonio Soulard to survey the land, and put St. Cyr in possession, at the locality indicated in his petition, "to be taken in the rear of the concession of the late Antoine Morin, Antoine Roy, and Benito Vasquez." Soulard, surveyor particular of Upper Louisiana, surveyed the tract for St. Cyr, and certified the same on March 12, 1802, accompanying the certificate with a plat of the survey. A claim was preferred to the board of commissioners appointed to adjust land-claims in the Missouri Territory for the confirmation to Leon N. St. Cyr. The claim was rejected on July 16, 1810, after examination. On June 13, 1812, the act of Congress was passed to enable parties claiming village lots, out-lots, and common-field lots to perfect their claims, and giving the recorder of land-titles power to adjust them, formerly vested in the board of commissioners. Pub. Land Laws, 216. It is not pretended that the claim of St. Cyr was a lot of the description named in this act. By the next succeeding act of Congress in regard to these Missouri land-claims, dated March 3, 1813 (Pub. Land Laws, 230), claimants in the Territory who had filed notice with the recorder, and not submitted evi-

dence, were given till January 1, 1814, to do so, and the power of the board of commissioners in regard to such claims was given to the recorder. The next act affecting these claims is that of April 12, 1814 (Pub. Land Laws, 242), confirming claims resting on incomplete Spanish or French concessions, or for which any warrant or survey was granted before December 20, 1803, and where the claimant resided in the Territory at either of these periods, and his claim had been filed and embraced in the report of the register, commissioner, or recorder. Claims confirmed under this act were to be satisfactory to the secretary of the interior. On February 2, 1816, Bates, the recorder of land-titles, made his report to Congress, in which he states that this tract is confirmed. On April 29, 1816, Congress passed the act (Pub. Land Laws, 280, sect. 2) by which it confirms all claims embraced in the report of Recorder Bates, of February 2, 1816, as being confirmed, including "grants and confirmations under the several acts of Congress, commencing with the act of June 13, 1812." In November, 1817, the Spanish survey of Soulard, of January 3, 1802, was surveyed by the United States, by survey 1927, for Leon N. St. Cyr.

Plaintiffs claim that by the act of 1814 the tract was confirmed to Leon N. St. Cyr and his legal representatives, and that this confirmation passed the equitable title only; the legal title remaining in the government until the act of June 6, 1874, from which time only, they say, the statute began to run against them.

Defendant, who has been in exclusive adverse possession for half a century, says that the legal title passed out of the government by the act of Congress of April 29, 1816, and that the plaintiffs are therefore barred. No patent ever issued.

Virginia Christy Dean is the only child of Israel Reed Christy, who was one of five children of Constance Christy, a sister of Leon N. St. Cyr, and a daughter of Hyacinth

St. Cyr. Hyacinth had twelve children. Leon disappeared at some unknown date in 1809, and has never been heard of; his brothers and sisters were his heirs. Respondent claims under Brazeau, who acquired from Hyacinth St. Cyr, who acquired a life-estate in the land and took possession, selling to Brazeau in 1817. That the deed of Brazeau passed no fee but only the life-estate of Hyacinth St. Cyr, was settled by *Watson* v. *Bissell*, 27 Mo. 220. Defendant sets up no record title. The case was tried without a jury, and the finding was for defendant.

It is determined in *Langlois* v. *Crawford*, 59 Mo. 456, that the act of 1816 passed to the confirmee the legal title from the date of that act; and the rule in *Chouteau* v. *Gibson* does not apply to titles derived under that act. Learned counsel for appellants seems to argue against that decision; but he can hardly expect that we shall practically reverse it or disregard it. At any rate, we have no disposition to do so; and unless this is done, it does not appear how we can do otherwise than affirm the present judgment.

The claim of St. Cyr having been rejected in 1810, the confirmation by Bates must have been under the acts subsequent to that date. In *Aubuchon* v. *Ames*, 27 Mo. 93, it is said that all the claims allowed by Bates, and set out in his report of February 2, 1816, were vested in fee by the act of 1816; and this is affirmed in *Langlois* v. *Crawford*, where the claim is just like the claim in the present case, and embraced in the same report of February 2, 1816.

Appellants say that Leon St. Cyr could not take under the act of 1816, because he was dead when the act was passed. He disappeared in 1809. The presumption therefore is that he was alive in 1816; and as no day of his disappearance is named, the presumption is that he was alive on April 29, 1816, the date of the act.

It is said that he was dead when the survey was made in 1817. But as the land had been already definitely located as a concession by De Lassus and a survey by Soulard, the

title passed by the act of 1816 without the survey of 1817. *Aubuchon* v. *Ames*, 27 Mo. 93 ; Opinion of Attorney-General in *St. Vrain's Case.* Besides, though there are no words of perpetuity in the act of 1816, the act of the Territorial Legislature did not affect the validity of the grant by the United States, which need not contain the technical terms usual in a conveyance. *Rutherford* v. *Greene*, 2 Wheat, 198. The language of the act is, that " all claims embraced in the recorder's report which have received his favorable decision shall be, and the same are hereby, confirmed." What does this mean but " all claims of every person, or the legal representatives of every person, claiming lands," etc., which is the explicit language of the former act on the same subject, of 1814 ?

The judgment of the Circuit Court is affirmed. All the judges concur.